**CASE NO. 26-10397**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

DARREN HUNTER

Plaintiff-Appellant,
v.

NETFLIX, INC., et al

Defendants-Appellees.

---

APPEAL FROM AN ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

# APPELLANT'S REPLY BRIEF

---

*/s/ Frederick J. Sujat*
Frederick J. Sujat, Esq.
5675 Brookfield Cir E
Fort Lauderdale, FL, 33312
fsujat@yahoo.com
Tel: 954-815-5221

*Counsel for Appellant*

# TABLE OF CONTENTS


ARGUMENT .......... 1

Mr. Hunter's Claims Were Not Frivolous and Objectively Unreasonable .......... 1

It Was an Abuse Of Discretion To Find That The Issue of Copyright Registration Renders Mr. Hunter's Claims Frivolous .......... 1

The Movie is Substantially Similar to the Book .......... 3

The Lower Court Abused its Discretion in Finding that Considerations of Compensation and Deterrence Favored Awarding Attorney's Fees .......... 1

The Lower Court Abused its Discretion in Awarding Attorneys Fees Under the FDUTPA and the Lanham Act .......... 11

There is a Final, Appealable Order .......... 13

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

## Cases

*Georgia v. Pub..Resource.Org, Inc.*, 590 U.S. 255 (2020) .......................................2

*Gwynn v. Rabco Leasing, Inc.*, 2010 U.S. Dist. LEXIS 45215 (M.D. Fla. Apr. 2, 2010).......................................................................................................2

*Jaffe v. Sundowner Props., Inc.*, 808 F.2d 1425, 1426 (11th Cir. 1987).................13

*Patrick v. Poree*, No. 23-12732, 2023 U.S. App. LEXIS 33078 (11th Cir. Dec. 14, 2023).......................................................................................................2

*Waste Pro USA v. Vision Constr. ENT, Inc.,* 282 So. 3d 911 (Fla. Dist. Ct. App. 2019).......................................................................................................13

## Statutes

17 U.S.C. § 505 ..........................................................................................11

17 U.S.C. § 301 ..........................................................................................12

15 U.S.C. § 1117(a)......................................................................................11

# ARGUMENT

## I. Mr. Hunter's Claims Were Not Frivolous and Objectively Unreasonable

The Lower Court abused its discretion in awarding attorney's fees on the grounds that Appellant Darren Hunter ("Mr. Hunter") claims were objectively unreasonable and frivolous. This finding by the Lower Court is particularly troubling where its underlying order of dismissal is still on appeal to this Court, particularly in a case where there was no discovery and the Lower Court simply made an erroneous decision to dismiss this action and award attorney's fees in a vacuum.

Put simply, the award of fees should never have occurred as there was no basis for the Lower Court to dismiss the Complaint at the mere pleading stage, which was far more than even plausible on its face, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

### a. It Was an Abuse Of Discretion To Find That The Issue of Copyright Registration Renders Mr. Hunter's Claims Frivolous

As set forth in Mr. Hunter's initial brief, the District Court clearly abused its discretion in finding that Mr. Hunter's claims were frivolous because they were brought "without satisfying the statutory prerequisites for establishing ownership of a valid copyright in Exoplanet—one of the two Works on which his claims are based." Lower Court Order at 6. Even in the unlikely event that this Court finds that Mr. Hunter did not satisfy the statutory prerequisite of a valid copyright in

Exoplanet – which he did -- there is certainly no basis to find that Mr. Hunter's claim was "frivolous." The facts to support this logical leap simply are not there.

In Mr. Hunter's initial brief, he demonstrated that the Lower Court erred in finding that the sequel, Exoplanet, was not registered with the U.S. Copyright Office. The U.S. Copyright registration set forth in Comp. ¶ 22, registration number TXu002396788 covers both the original book as well as its sequel. Furthermore, it is also clear that "[t]itle 17, United States Code, Section 408, states 'clearly' that 'registration is not a condition of copyright protection.'" *Gwynn v. Rabco Leasing, Inc.*, 2010 U.S. Dist. LEXIS 45215, at *14 (M.D. Fla. Apr. 2, 2010). "Unlike other forms of intellectual property, copyright protection is both instant and automatic. It vests as soon as a work is captured in a tangible form." *Georgia v. Pub..Resource.Org, Inc.*, 590 U.S. 255, 275 (2020). *See also Patrick v. Poree*, No. 23-12732, 2023 U.S. App. LEXIS 33078, at *5-6 (11th Cir. Dec. 14, 2023) ("Copyright registration is not necessary for copyright interests to vest…. Poree and Sherman's rights as authors vested *before* the registration rather than coming from the registration.")

Thus, Mr. Hunter demonstrated that properly sued on both the initial book and the sequel, and even in the unlikely event that his copyright registration only covers the initial book, he had more than a reasonable belief that it covered both

before filing this action, particularly given that he had retained an attorney to do so. ECF No. 49, Ex. A.

Thus, at a bare minimum, any issue with the copyright registration certainly does not support a finding that his claims were "frivolous" or "objectively unreasonable."

**b. The Movie is Substantially Similar to the Book**

As set forth in Mr. Hunter's initial brief, in granting the Appellees' Motion to Dismiss, the Lower Court, in a wholly conclusory manner, asserted that

> … similarities listed in Plaintiff's chart stem from broad uncopyrightable ideas that are typical of works that center around the Earth's destruction: the protagonist is the first to learn and warn the public about a celestial threat, the public is in disbelief upon learning about the threat, and the populace attempts to find a solution for such a threat. Moreover, the similarities between these works are at the broadest levels, i.e., the similarities between the protagonists are limited to their female gender and the similarities between the settings to scenes taking place in the United States." ECF No 51 at 11 – 12.

This over-generalized approach simply "glosses over" the vast majority of the meticulously detailed elements from the Book which are copied by the Movie, as set forth in Mr. Hunter's initial brief in the both the substantive appeal and this appeal.

As a threshold matter, Mr. Hunter's position has been that the Lower Court failed to properly consider these detailed similarities so there is absolutely nothing wrong with him presenting to this Court—which is reviewing the Lower Court's

decision—his meticulously detailed chart showing these substantial copied elements. The Appellees bizarrely claim that by relying on this chart, Mr. Hunter is not "addressing the criteria governing fees awards." ECF No. 31 at 19 – 20. This is a blatantly false assertion given that one of the factors for determining whether fees are warranted are whether the original suit was "frivolous." The chart clearly demonstrates that it was not.

The Appellees predictably attempt to capitalize on the Lower Court's clear error and assert that the elements of the Book which were copied by the Movie were "random similarities." This is simply not true. Contrary to the Appellees' argument, the similarities between the Book and the Movie are not only evident on the "broadest of abstraction," but indeed, appear even on the minute details. This is not random, and certainly, not frivolous.

***Plot and Sequence of Events***. The Book and Movie both have substantially similar plot and sequencing. *First*, both young female protagonists discover that there are celestial objects on a collision course for Earth which would destroy Earth upon impact. *Second*, both young female protagonists attempt to contact NASA after this discovery. *Third*, both young female protagonists make public warnings about the looming threat in an attempt to "mitigate the impact of the [celestial threat]." *Fourth*, both young female protagonists' warnings are ignored by an apathetic public, leading to frustration that no one else understands. *Fifth*,

both young female protagonists are disbelieved and go viral on social media with demeaning hashtags (#SpaceRabbit Girl and #BlameKate). *Sixth*, both young female protagonists are called crazy and subsequently ridiculed at school. *Seventh*, both young female protagonists are detained by government agents. *Eighth*, both young female protagonists are offered deals in exchange for remaining quiet about the looming threat. *Ninth*, both young female protagonists are disbelieved and rejected by their parents. *Tenth*, in both the Movie and Book, there is a plan set in motion to save Earth from the looming celestial threat. *Eleventh*, in both the Movie and Book, the plan to save Earth from the looming celestial threat is cancelled in favor of an alternative plan that financially benefits the person controlling the President of the United States of America (Dr. Soren in the Book and Peter Isherwell in the Movie). *Twelfth,* the new proposed solutions in both the Book and Movie involve the Large Hadron Collider located at CERN; *Thirteenth*, in both the Book and Movie, this results in division and mass protests in society. *Fourteenth*, in both the Book and Movie, the presidents travel to an exoplanet and are attacked by aliens (Emma in the Book and Janie Orlean in the Movie). Comp. ¶ 30.

Any minute distinctions between the Book and Movie asserted by the Appellees are not even close to sufficient to outweigh the substantial similarities under. *Maloney*, 891 F. Supp. at 1568. For instance, Appellees in their motion to dismiss attempted to argue that the celestial threat in the Movie is a comet and the

celestial threat in the Book is a "cluster" of space rocks. This is truly a distinction without a difference, particularly given that comets are made up, in part, of rocks.[1] Accordingly, none of the small distinctions set forth by Defendants are remotely sufficient enough to overcome the overwhelmingly similar plot and sequences between the Book and Movie.

***Theme and Mood***. The themes and mood of the Book and Movie are identical. As set forth in the Complaint, both the Movie and the Book share the "themes of apocalyptic political satire, dark comedy, and the challenges of mobilizing collective action in the face of imminent danger." Comp. ¶ 37. Specifically, both the Movie and Book serve as warnings against society placing financial interests over directly addressing looming existential threats, in both cases, being an allegory to climate change and a rebuke against those who choose to ignore it for their own immediate personal benefits. Comp. ¶¶ 34 – 36. The comet functions as a metaphor for climate change similarly in both works. As the story unfolds, there is less and less time to deal with the reality of the comet/climate change's inevitability if immediate action is not taken. Appellee McKay repeatedly stated that the Movie was a metaphor for climate change. The tagline on the cover of the Movie is " There's a dramatic change ahead in the

---

[1] https://science.nasa.gov/solar-system/comets/#:~:text=Comets%20are%20frozen%20leftovers%20from,be%20larger%20than%20a%20planet.

forecast." Furthermore, both the Book and Movie both aim to provide commentary on society's obsession with pop culture and social media to the extent that people would ignore extinction level events in favor of pop culture and social media. Comp. ¶ 30.

The overarching themes and the message that both the Book and Movie attempt to deliver are identical. A few minute distinctions asserted by Appellees in their motion to dismiss in the ways that the Book and Movie choose to deliver these identical themes and messages cannot overcome their overwhelmingly similarities.

***Characterization***. There is substantial similarity between the two protagonists in the Book and Movie. Emma and Dibiasky are both young females. They are both students in the same field, with Emma being an "advance placement astrophysics student" and Dibiasky being a doctoral candidate in astrophysics at Michigan State. Both discover existential celestial threats which will destroy Earth. Both try to warn the public and both are ignored and portrayed as being crazy. Comp. ¶ 30. In their motion to dismiss, Appellees point out a minute difference—namely that Emma is a high school student and Dibiasky is a doctoral student. However, the bottom line is that both are still students in the same field, and such minute differences do out outweigh the litany of substantial similarities.

*Furthermore*, both the Book and Movie have "mentor" characters that provide guidance to the younger female protagonists. In the case of the Book, it is Srenyi of planet X7gTH5 and in the case of the Movie, it is Dr. Mindy. Defendant Netflix tries to argue a lack of similarity due to the appearance of the characters, with Srenyi obviously being an alien. This, however, ignores the fact that Srenyi is a character in a book and Dr. Mindy is a character in a move played by Leonardo DiCaprio. It is impossible to draw parallels between the characters' appearances where the mediums are so different. The substantial similarly between Srenyi and Dr. Mindy lies in the function that both characters serve, namely to "provide scientific authority and credibility for the protagonists' claims" Comp. ¶ 30.

Other similar characters exist, such as decorated war veteran Captain Somers in the Book and Colonel Drask in the Movie. Both war veterans are launched into space. Comp. ¶ 30. Both the Book and Movie feature self-serving presidents of the United States, President Grayson and President Orlean, who are beholden and controlled by more powerful figures who are acting in their own self interest—Dr. Soren in the Book and Peter Isherwell in the Movie.

***Setting***. Both the Movie and the Book take place predominantly in the United States of America and both involve threats from outer space. Both Emma's and Dibiasky's respective schools are featured. Also, in both the Book and the

Movie, the characters travel to an exoplanet where they are attacked by aliens. Comp. ¶ 30.

***Pace.*** Defendants conflates the period of time before the extinction event in the Book—one million days—with the pace of the Book. Just like in the Movie, the events of the Book are resolved quickly. Emma zealously tries to warn the world of the urgency to begin building a solution immediately because she's been informed that humans must begin work immediately on this "precise" day or will be extinct. In the Book, she states, "[w]e don't have any time to waste."

Furthermore, the Movie also involves events in the far future where President Orlean, Peter Isherwell and others arrive on an exoplanet.

***Dialogue***. There exists a litany of substantially similar in the dialogue in the Book and Movie. For instance, in both the Book and Movie, the presidents (President Emma and President Orlean) state that they can now smoke in public because they are president. Comp. ¶ 30.

Accordingly, in sum, there exists more than substantial similarity between the Book and the Movie in every single pertinent element that could have been considered by the Lower Court. Thus, given the overwhelming number of highly specific similarities in (1) Plot and Sequence, (2) Theme and Mood, (3) Characterization, (4) Setting and (5) Pace between the Book and the Movie, there is no fathomable way to make the colorable argument that Mr. Hunter's claims did

not even have "arguable" legal merit or that Plaintiff had brought these claims in bad faith and were therefore "frivolous" or "objectively unreasonable."

**c. The Lower Court Abused its Discretion in Finding that Considerations of Compensation and Deterrence Favored Awarding Attorney's Fees**

The Lower Court abused its discretion in finding that the interests of compensation and deterrence favored an award of attorney's fees. The Lower Court rested this determination on its already erroneous finding that Mr. Hunter's claims were "frivolous" and "objectively unreasonable." Because, for the reasons set forth in the preceding section, the Lower Court's findings in this regard must be reversed, so too must its interconnected findings with regard to compensation and deterrence.

The Court must thoroughly and carefully review the meticulously detailed chart detailing the multitude of substantial similarities between the Book and the Movie. Given all of the substantial similarities, even if the Court ultimately decides that the Lower Court properly dismissed Mr. Hunter's claims—which would respectfully be erroneous—it certainly cannot take it to the next level by finding that Mr. Hunter's claims were "frivolous" and thus subject to attorneys' fees. This would have a severely detrimental impact on individual creators protecting their rights against enormous media conglomerates with unlimited resources like the Appellees. A finding that Mr. Hunter's claims are "frivolous" and "objectively

unreasonable" and thus subject to attorney's fees would render toothless the copyright protection laws that are in place

Finally, the Appellees bizarrely appear to claim that Mr. Hunter should be subject to attorney's fees and costs because he chose to appeal the Lower Court's erroneous order of dismissal. ECF No. 31 as 21 – 22. That Appellees would seek to punish Mr. Hunter simply for exercising his constitutional due process rights strongly evidences their bad-faith motivation.

## II. The Lower Court Abused its Discretion in Awarding Attorneys Fees Under the FDUTPA and the Lanham Act

The Lower Court clearly abused its discretion in finding that Appellees are entitled to fees under the Lanham Act, which are only allowed in "exceptional" cases. 15 U.S.C. § 1117(a). For the reasons set forth above, Appellees are not entitled to fees under even a "discretionary" standard pursuant to 17 U.S.C. § 505. Thus, they certainly are not entitled to fees for the same reasons under the substantially heightened "exceptional" standard. Appellees claim that the "exceptional[2]" standard—which they bizarrely apparently attempt to claim is not a heightened standard—is satisfied because Mr. Hunter's claims are precluded by *Dastar Corp. v. Twentieth Century Fox Film, Corp.*, 539 U.S. 23 (2003). This argument fails because *Dastar* is distinguishable from the facts at issue and there

---

[2] The Cambridge dictionary defines "exceptional" as "much greater than usual," which would clearly create a significantly heightened standard. *See https*://dictionary.cambridge.org/us/dictionary/english/exceptional

are multiple Courts which have found under similar facts to the ones at issue that claims under the Lanham Act are not precluded.

In *Dastar*, the Court found that a claim for "false designation of origin" under the Lanham Act was precluded when the producer Dastar copied and edited a documentary series originally produced by Fox – who had failed to renew the copyright and allowed it become part of the public domain – and subsequently manufactured and sold the documentary as it won product. *Id*. at 26. The Court decided this issue under its interpretation of the meaning of the phrase "origin of goods" for reverse passing off claims, *id*. at 38, but this issue is not present here. Thus *Dastar* is distinguishable because (1) unlike *Dastar*, which included expired copyrights, the copyrights here are valid, (2) Plaintiff's claim is for "false advertising" and not "false designation of origin" and (3) Plaintiff's claim involves a tangible item—the Book—whereas *Dastar* involved only film.

The Lower Court also abused its discretion in finding that the Appellees were entitled to fees under the FDUTPA simply because it has erroneously found that the FDUTPA claims were "preempted" by the Copyright Act. As set forth in Mr. Hunter's initial brief, 17 U.S.C. § 301(a) states that the Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." This argument fails because preemption does not occur so long as the state law claim requires an "extra

element" for recovery that makes the action qualitatively different from the copyright claim. Any claim under the FDUTPA requires "a deceptive act or unfair practice." *Waste Pro USA v. Vision Constr. ENT, Inc.,* 282 So. 3d 911, 917 (Fla. Dist. Ct. App. 2019). There is no such requirement under the Copyright Act and thus no preemption is present.

## III. There is a Final, Appealable Order

Appellees echo their already-raised argument in their motion to dismiss that this appeal should be dismissed for a lack of appellate jurisdiction because the January 5, 2026 order only determined entitlement to fees and not the amount of fees. This appeal was initiated in an abundance of caution so as to ensure that Appellant's jurisdictional right to appeal the fees issue was not waive, particularly as there are situations where an order granting only entitlement to fees and not the amount is immediately appealable. For instance, "When attorney's fees are similar to costs . . . or collateral to an action . . . a lack of determination as to the amount does not preclude the issuance of a final, appealable judgment on the merits." *Jaffe v. Sundowner Props., Inc.*, 808 F.2d 1425, 1426 (11th Cir. 1987).

In the event that the Court determines that attorney's fees are not "collateral" to this action and therefore the Lower Court's January 5, 2026 order its non-final, Appellant respectfully requests that the Court simply stay this appeal instead of dismissing it outright. This course of action serves the interests of justice and

fundamental fairness and mitigates the need for Appellant to potentially pay the extremely costly Notice of Appeal fee twice.

## CONCLUSION

Based on the foregoing, the Court must reverse the Lower Court's finding that Appellees are entitled to attorney's fees, particularly given the fact that the award of fees should never have occurred as there was no basis for the Lower Court to dismiss the Complaint, which was far more than even plausible on its face at the pleading stage, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Put simply, given the enormous number of substantial similarities in every single relevant element--(1) Plot and Sequence, (2) Theme and Mood, (3) Characterization, (4) Setting and (5) Pace—it was an abuse of discretion for the Lower Court to find that Mr. Hunter's claims were "frivolous" and "objectively unreasonable." To hold otherwise would render the Copyright Act toothless and strip away any hope of individual creators from protecting their rights against giant media conglomerations such as Appellees who have unlimited resources. This is particularly true with regard to Mr. Hunter, who does not have the resources to pay an award of attorney's fees and it is extremely baffling that a billion dollar corporation like Netflix would try to seek to extract this punitive "pound of flesh" for an individual simply asserting his rights. This does not serve the interests of

justice and fairness, and even more importantly, harms every single individual in the creative field.

Dated: September 18, 2026

Respectfully Submitted,

*/s/ Frederick J. Sujat*
Frederick J. Sujat, Esq.
5675 Brookfield Cir E
Fort Lauderdale, FL, 33312
fsujat@yahoo.com
Tel: 954-815-5221

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 3,375 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 15.28 in 14-point Times New Roman.

Dated: September 18, 2026 /s/ *Frederick J. Sujat*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY September 18, 2026, the foregoing was served on counsel for Appellees through the Court's ECF system.

*/s Frederick J. Sujat*